The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good morning, counsel. Our first case of the morning is 4-22-0479 Sarah Short Appellant v. CSS Audio, Inc. at All Appellees. Could counsel for the appellant please state your name for the record. Polly S. O'Hale for the appellant, Sarah Short. Thank you. And counsel for the appellate, could you please state your names for the record. J.D. Van Reeden for the appellate, Premier Audio Visual. Good morning, Rachel Brandt for appellate, CSS Audio. And my schedule indicates that Mr. Van Reeden, you'll be leading off on appellate's argument, is that correct? That is correct, your honor. Okay. Ms. O'Hale, you may proceed. Good morning, your honors. May it please the court, Hania O'Hale on behalf of the appellant, Sarah Short. This case involves an accident that Ms. Short was involved in on February 1st of 2018. At the time of the accident, she was employed by SMG as a stagehand. The job of the stagehand was to basically prepare the stage and prepare the events that were going to take place at Peoria Civic Center. On the date of the accident, there was an event that was taking place. The event was known as Black and Blue Ball. Petitioner or plaintiff, Ms. Short's job on the day was to basically unload boxes that various contractors were bringing to get the equipment and get the stuff that was needed for the event. On the date, the Premier Audio and CSS Audio were also present, and they were providing audio-visual equipment. CSS Audio was hired by the event. They were hired by Easter Seals, and CSS Audio went ahead and subcontracted Premier Audio to provide for some visual services. Now, unknowing to Ms. Short on the date of the event, when CSS Audio and Premier Audio brought their trucks with equipment, they brought on the Premier Audio trailer a lift known as a genie lift, which is essentially what caused Ms. Short's accident. The lift is a crank-up lift that is used to basically put stuff up in the air to set up the stage. Ms. Sohail, could you clarify? I understand that the lift tipping is what caused the accident. What's plaintiff's theory as to what caused the lift to tip? The plaintiff's theory, Your Honor, is that the lift was being brought up on a trailer, and in order to unload that lift, there has to be a ramp, and this was a fold-out ramp attached to the trailer. When the ramp was laid out, there's a flip towards the end, and it can fold out. The ramp was not laid even in a way that the ramp was not hitting and was not transitioning smoothly with the concrete. There was a drop towards the edge of the ramp and the concrete, and there is testimony. There are people who said that the drop was approximately three-fourths of an inch, and then we also have testimony where the drop was maybe an inch to two inches. That when the genie lift leading wheels caught the edge of the ramp, because there was no evenness to the concrete, the genie lift tipped over and caused plaintiff to be injured. So it's my understanding that the truck, therefore the ramp, was provided by Premier and that the lift itself was provided by CSS Audio. What's your theory for liability against CSS Audio since it didn't provide the truck or the ramp? That would touch on the element of duty, and that is the second argument that I made in my brief, and the duty element goes to the fact that we are not talking about CSS Audio here being liable because it subcontracted Premier Audio for equipment that was being brought by Premier Audio. This lift, this genie lift, belonged to CSS Audio. They had rented and they had borrowed it out to Premier Audio before the accident, before the date of the event, and they borrowed it for different reasons, not pertaining to this event, not pertaining to my client. And they should have known that this lift, as described by various witnesses, is a top-heavy lift. They should have known that a top-heavy lift is something that is likely to cause injury to the plaintiff. They were in position to make sure that the equipment, that the trailer that is being brought to unload this genie lift should have been reasonable in nature to assure safe transport and safe unloading of the genie lift, and they didn't do that, and pursuant to the four elements of duty, they owed plaintiff a duty because they were the ones asking her to unload that. It remains undisputed that they were directing plaintiff to unload the genie lift out of the Premier trailer, and they were in a better position to ensure than the plaintiff that this lift was safe to be unloaded from the trailer that was set by Premier Audio, or the ramp that was set by Premier Audio. So, Judge, I do believe that that goes to the duty end, and as argued, that we do meet the four elements of duty, and CSS Audio is liable because the lift belonged to them, and they are the ones who instructed plaintiff. Counsel, is it true that this was the last item to be removed from the truck? It is, Your Honor. There were different various items that were removed from the truck. Is it also true that this is the second of two genie lifts to be removed from the truck? It is true, Judge. The first genie lift... Is it also true that the first genie lift was removed without incident? It is true, Your Honor. And that every other item removed from the truck was removed without incident? The other items were also removed without incident, but the other items were very different in nature. They were small boxes. They were nothing like the genie lift. Is it true that other than Mr. Wald, everyone else said that the end of the lift was down, and in fact, if it wasn't down, they wouldn't have been able to remove the other items from the truck in the first place? Judge, down, they all said that yes, that the extension was present. That being said, though, if you look at William Kenney's deposition, William Kenney also testified that there was a three to four inch drop. And William Kenney is, by the way, the only individual that investigated this accident, and he had OSHA training, and he is the one responsible for investigating accidents that take place at Peoria Civic Center, and he has been doing it for 20 years. He did indicate that there was a drop. He also indicated that there was a design defect with this ramp, and he also indicated... Well, if it's a design defect, then we're talking about somebody else entirely, aren't we? We are, Judge, but it kind of goes to the testimony of Ms. Wald, because his testimony kind of corroborates with Mr. Wald's testimony, because he went ahead and said there could be a thin metal flip that can be present there that is going to make the transition smooth and avoid the drop, so... Mr. Kenney, is it true Mr. Kenney said that the drop-off was approximately three quarters of an inch? That's what he said, Your Honor. That is true. And there's no other way to position the trailer to not have that drop? Not the specific trailer that they brought in. Okay. Is it true that other than Mr. Wald... Well, let me back up. Is it true that Mr. Wald is the only person who claimed that the end of the ramp was not flipped down? Yes, Your Honor, that is true. Is it also true that Mr. Wald admitted to another individual that what happened was that he slipped and let go of the genie lift, and that's when it fell over onto your client? I apologize, Judge. I am not... I don't have that fact memorized. Are you referring to another individual that was not present there? Well, I'm looking for it. Anyway, go ahead with your argument, and I'll come back to that. So, Judge, I understand that Mr. Wald's testimony is the only testimony here that indicates that at the time of the accident, the configuration of the trailer and the ramp was not the same as was depicted in the photographs that were shown to various witnesses. We are here to argue that the Honorable Judge Reisinger was incorrect in granting motion for summary judgment and finding that the ramp that was there was reasonably safe. We believe that the Honorable Judge was wrong for four different reasons, and the first reason is that he ignored all the evidence, and the evidence, again, being petitioner, Ms. Short, the plaintiff herself, testified that it was the unevenness of the ramp that led her to tip... that the genie lift to tip and led her to injure herself. But she also testified that the extension was, in fact, down. She testified that's what she remembers, Judge, but here's what we have to focus on. What we have to focus on is if this case goes in front of the trier of the facts, the trier of the facts are going to look at two individuals who were responsible for unloading this genie lift, Ms. Short and Mr. Wald. They would be the one who is going to have firsthand knowledge of the ramp that they were unloading the genie lift on that tipped. Now, finder of facts can argue and say, okay, you know, Ms. Short may have been in shock. She had a 500 to 600 pound genie lift that tipped over her, that pinned her to the ground, and maybe she was in shock. Maybe her memory was not as good as Mr. Wald, who was also on this ramp. Isn't the evidence that they couldn't have unloaded this without the ramp being down? I don't believe that there is any evidence to that effect. And, in fact, they did unload one, which it would be very – if somebody suggested you really couldn't unload it unless that was down. Judge, I don't believe that anybody suggested that. What they did say was that it is – the ramp that it was was within the industry standards, and that is a ramp that you can unload genie lifts safely. So, again, we are dealing with summary judgment. The Honorable Judge Reisinger ignored the evidence, ignored testimony of Mr. Wald, and said the ramp as depicted in the photo is safe because of the fact that there is some lift. And he substituted his own judgment and said, I know about trucks. I'm familiar with that, and every single ramp is going to have a lift. Well, we don't even get there because Mr. Wald is saying that that extension wasn't even present. The judge also went ahead and assessed credibility on behalf of Mr. Wald. Well, and I – it's easy – I'm sorry, go ahead. Go ahead, Mr. Justice Chairman. It's easy to kind of slide into the concept that credibility is being assessed. But if, for example, you have seven witnesses who say A, and you have one witness that says B, then does that create a genuine issue of material fact? It totally does, Judge, because it totally does. If you have seven witnesses who all indicate, for example, that the ramp – the end of the ramp is down, and it was Mr. Reed, by the way, who said that if the hinged extension wasn't folded out, it would be folded up onto the ramp and it would be almost impossible to unload anything. So you have that. And then you have Mr. Wald, who has admitted to at least one individual that he slipped and let go of the genie lift, and then that's when it fell. You're saying that in spite of that, as long as somebody says something contrary to what all of the other witnesses do, that creates a genuine issue of material fact? It does, Your Honor, because – Okay. So let's take that one step further. If Mr. Wald had said, I was minding my own business, and a Martian came down and pushed that genie lift onto the plaintiff, since that fact is contrary to all of the other evidence, that's a genuine issue of material fact. Not necessarily, Judge. I think we have to – It has to be reasonable, Judge. Okay. It has to be reasonable. And Mr. Wald, it's not – he didn't testify in his deposition. Maybe it was there, maybe it wasn't. He had specific recollection. He went on detail for his two-hour deposition that that hinge just was not present and there was a drop. And he also testified to the fact that he asked somebody to take a photo of it because it just wasn't there. Then we are talking about – first of all, there were seven depositions, not eight, that were submitted. So there are six people who indicated that the extension was there and Mr. Wald said it wasn't. But if we start factoring in the numbers and say six versus one, then all we are doing here is we are weighing evidence. And we can't weigh evidence as part of a summary judgment. We don't have to prove our case. We just have to say there is one fact that is going to entitle us to relief. It could be, again, that the jurors may side with Mr. Wald and say he knows the best. He was the one who was pushing the load. He knows it. And based on what he said and based on his detailed recollection, asking someone to take a photo, admitting that he thought about that, that it wasn't there and physics took over, that is what we are going to go by. Isn't one witness sort of more important than the others and that's your client? Your client can make an admission and not contradict it with some other witness's testimony. If your client has admitted as a matter of fact that the extension was down, she shouldn't be allowed under the law to offer testimony that it wasn't. Judge, my client indicated that she did not. She indicated that there was a drop. Okay. That's what she said. She also said she did not. Everybody says there's a drop. Everybody says there's a drop. But as Justice Doherty has just asked, if your client has acknowledged that the flap was down, she can't now change that later and say, well, maybe it wasn't. It's not even just about the flap, Judge. It's about this ramp. There are many things that came up in evidence. It's the fact that Jeff Wald said the flap wasn't present. It's that everybody said that there was a drop. The judge substituted his own judgment and said nobody in the evidence that came to say that every single ramp is going to have some kind of lift. That fact is not in evidence. That is Honorable Judge Reisinger's own judgment based on his experience in the trucking field. Well, Cladney said it. The investigator said it, that no ramp is going to ‑‑ the amount of smooth to the ramp is almost nonexistent. They all have some sort of a drop. I'll acknowledge that there's some sort of a drop. I mean, just common sense would tell you that if they unloaded the entire truck up to this point and unloaded another lift identical to this one, that the drop probably isn't the issue. It was Mr. Cladney, by the way, who said that Wald told him he had a hand on the top of the lift and he stumbled and let go. And Mr. Wald and the other witnesses testified otherwise. And, Judge, I don't think that that would be a relevant fact here because multiple ‑‑ But the judge has to weigh the ‑‑ the judge has to look at those facts and see what are genuine issues of material fact and what are not genuine issues of material fact. It is a slippery slope, I agree, where you can easily slide into making credibility determinations. But when he's confronted with the acknowledgment by Wald, who's the only guy saying that this ramp wasn't down, that he also let go, he slipped and let go, you're saying that that doesn't allow him to make the determination that there is no genuine issue of material fact as to the nature of the ramp itself. Judge, I'm saying that that issue would go to comparative fault, possibly. If Mr. Wald did, in fact, if the jurors do believe that Mr. Wald did slip and that's what happened as well, nobody said that there wasn't a drop. It remains our theory and it was our theory of liability that it was a drop. The leading edges of the wheel caught the drop and that's what caused the genie lift to tip over. Okay. Counsel, before you run out of time, I want to shore up a point. Justice Doherty had asked you your theory of liability on CSS audio, and you indicated the duty element that they should have known with regard to the defect. And then Justice DeArmond sort of took successful attempts to move other items. Can you explain to me what the known defect for CSS would have been, what was the problem that you're referring to? The defect would be that the genie lift belonged to CSS audio. They know exactly the measurements of this lift. They know how exactly this lift can be safely and properly transported back and forth. And the defect is the ramp, the trailer's ramp, and they allowed for that ramp to be in there. They didn't inspect it. They didn't inspect the fact that their lift is going to be taken down this ramp by somebody working for SMG. And they basically just let her do that without ensuring that the ramp was safe for the genie lift to be transported out of there. I see. So you accept Justice DeArmond taking you through all the successful instances of moving things. You're not suggesting there was any precedent of any problems with the lift moving things off prior to this incident. We are not aware of any issues prior to this incident. Nobody said, I mean, it is a ramp, it's a ramp, sorry, trailer's ramp. What we are arguing is how it was laid out that day by Premier, that was a defect that was present. How would they know that Premier was going to lay it out in a defective way? Well, they should have known, Judge, because it's their lift. And it is being present there just for the exchange between CSS Audio and Premier Audio. They're the ones who directed the plaintiff to unload that. And if they're going to do that, it becomes their duty to inspect it. I see my time is up. Your time is up, but you will have an opportunity again. Thank you, Your Honor. Thank you very much. Counsel for the appellee.  Thank you, Your Honor. Thank you, Mr. Van Rieten. Van Rieten, I'm sorry. That's all right, Your Honor, for Premier Audio and Visual. I would like to first point out that this review here today is de novo. So though I understand that Plaintiff's Counsel has qualms with the ruling of Judge Reisinger and his reasoning for that ruling, that is not relevant to the appellate court's review of this case today after a grant of a summary judgment. Here, the plaintiff alleges against Premier a duty to provide a reasonably safe ramp to unload this piece of equipment. Now, in order to succeed upon that, obviously, plaintiff is going to have to show a breach of that duty. And to show a breach of that duty, plaintiff is going to have to put forth evidence of an unreasonable ramp, of a defect in the ramp, or that the ramp was unsafe. In this case, there's simply no such evidence whatsoever. I know that Plaintiff likes to lean on the testimony of Jeff Wald, but the fact of the matter is, if you go through the Jeff Wald deposition, he never once says that the drop itself was defective, that the ramp was defective, that it was unsafe, or that it was unreasonable. Though he disputes in his deposition the actual height of the drop and whether or not the extension was up, he does not ever say that it was defective, unreasonable, unsafe. Well, those are the conclusions. Could a jury conclude, based on the factual testimony, that it was unreasonable or unsafe? Your Honor, that's a great question. No, not in the face of the overwhelming testimony from the other industry professionals in this case, including the plaintiff herself, that the ramp was configured in a method which was industry standard, reasonable, and which worked just fine for unloading the rest of the equipment from the trailer. No reasonable juror could be presented with that evidence and no evidence to the contrary, and then infer from just a slight difference in the drop height that it was unreasonable or unsafe. So in this case, then, the plaintiff is left with absolutely no evidence of a breach of the alleged duty. And so, contrarily, as I just mentioned, there is ample evidence from industry professionals here, who, though they may have not been the individuals unloading the genie lift, plaintiff was, the other individuals did have independent knowledge of this ramp and the configuration on the day. They testified that it was reasonable, that it was industry standard, that it was appropriate for unloading all of this equipment that was on the truck, and that it had worked just fine for unloading the other equipment, including one genie lift prior. And so that is the testimony that is available in this case. And I do count six witnesses plus plaintiff who have testified to that. And it really is damning, Your Honors, that plaintiff herself testifies that this ramp was normal, that she'd seen many like it in the past, that it's industry custom and standard, that she did not notice any safety concerns or defects with this ramp on the date of the occurrence. A jury is going to be faced with that testimony from plaintiff and then testimony that corroborates it from six other individuals that had independent knowledge of the ramp. Now, though Jeff Wald does dispute whether or not the extension was folded down and the actual height of the drop here, importantly, he did not go on to state that that drop itself was unreasonable or defective. So when faced with the overwhelming evidence that the ramp was custom, industry standard, reasonable, non-defective, and no evidence to the contrary here, a reasonable juror could not rule for the plaintiff. As a matter of law, the plaintiff fails to put forth absolutely any evidence of a defective condition with this ramp or that it was unreasonable. And summary judgment was therefore proper for the defendants and must be upheld. Now, further getting into the Jeff Wald testimony more closely, Your Honors have picked up on a lot of the pertinent issues with that testimony. It's obviously severely contradicted by the other witnesses in this case. And as briefed, it's illogical and it's inconsistent. If it's contradicted, does that not create an issue of fact for the jury to resolve the contradiction? No, because the contradiction, as Your Honors have astutely pointed to, does not create a genuine issue of material fact, which is what plaintiff must put forward here to survive summary judgment. Are there cases you rely on to define what genuine means in this context? I have not cited any such cases in my briefing, Your Honor. So, I mean, it sounds like you're using genuine to mean as long as it's not overwhelmingly in one direction. Yes, I think it's, again, as Attorney Sohel may have mentioned, reasonable, right, Your Honor? We can look at this and determine what's a reasonable and genuine issue by looking at the totality of the circumstances. And weighing the evidence? I don't want to use the term weighing the evidence, Your Honor. I do understand that we're not going to do that here. And where I'll point you, Your Honor, is I don't think we need to weigh the credibility of Jeff Wald or the evidence in order to see here that the plaintiff has put forth absolutely no evidence of a breach or a defect here, which is where I just pointed previously. Even if we take Jeff Wald's testimony as credible and on its face, there's still no evidence from Jeff Wald or anyone else that this ramp was unreasonable, defective, or unsafe. And so summary judgment can be upheld on that alone. But is there not testimony from him that it was not implemented properly? Regardless of whether it could have been safe had the extension been unfolded, doesn't he suggest that the extension wasn't unfolded? He certainly suggests that it wasn't unfolded. But I'm not aware of any testimony from Mr. Wald that that meant that it was not implemented properly. But that's sort of a conclusion. I mean, I don't think witnesses come in and say, well, this was negligent, that wasn't negligent. They give the facts and juries draw conclusions. So could a jury conclude if it wasn't folded down? Oh, well, that was negligence on the part of the people unloading the truck. I don't think they could conclude that in face of the overwhelming testimony to the to the contrary, Your Honor. And here, you know, Jeff Wald, we really have to look at the totality of the circumstances. His evidence, his testimony is contradicted by his own report. It's contradicted by seven other witnesses, including the plaintiff herself. And it's frankly, as your honors have picked up on, it's illogical as if the actual extension was folded up. This equipment, are there any cases that say that testimony which is illogical does not create an issue of fact? I'm not aware of those cases, Your Honor, but in the use of the word genuine is used in the law here, which you can't define for me. I have not defined the term genuine in my briefing. I apologize that for your honor. But I think it's certainly in this situation something where, you know, where you see it. And Judge Jarman's example of the Martian coming down is a good example of that. One witness's testimony that the sky is green shouldn't be allowed to force a trial on that issue in the face of, you know, multiple other witnesses, including the plaintiffs themselves, that the sky is blue. And I just don't think that there's evidence here that would allow this case to survive. There's no issue of a genuine issue of material fact. I do want to move on to a second issue here, which is that there was allegations that Premier was had a duty to and breached a duty to train, supervise, instruct. Those allegations were conceded against a by plaintiff in the motion for summary judgment. I don't think they were brought up in her briefing, but I do just want to mention them at this oral argument that those concessions should continue through this appeal. Now, under the facts and circumstances and the evidence and the testimony in this case, plaintiff simply cannot meet her burden on her allegations against Premier. And accordingly, summary judgment should be affirmed for Premier. With that, your honor, I will. Your honors, I'll conclude. If you have any questions, I'm more than happy to field those. I see none. Thank you, Mr. Van Raden. Thank you. Ms. Brandt. Good morning. May it please the court and counsel. My name is Rachel Brandt. I represent CSS Audio in this case. To begin with, CSS Audio's connections to this injury are simply too tenuous to impose liability. Imposing liability is not supported by the facts of this case or any law, and plaintiff is unable to cite any law which would afford her the relief she's requesting. Liability should not be imposed on CSS Audio simply by virtue of owning a piece of equipment. Again, this piece of equipment and the testimony is undisputed that this genie lift was a normal genie lift. There was nothing out of the ordinary about the genie lift. Yes, it's top-heavy, but that's well known in the industry. Some relevant facts that have kind of been touched on, but I want to address more specifically. There were two CSS Audio employees present at Peoria Civic Center where this event was being held on the day of Ms. Short's accident. That's Dan Grimm and Dave Batten. Those were the only two employees that were deposed. There's some evidence that there might have been two other employees, but they were off in the ballroom, not near the loading dock. Neither of the two CSS Audio employees who were at the loading dock had anything to do with setting up this ramp. This ramp belonged to another company. It would be inappropriate for CSS Audio employees to go up to Premier Audio Visual's trailer and set up their own ramp. Mike Reed, Dan Grimm, and Dave Batten all testified consistently there. Dan Grimm was not present at the time on the scene of when plaintiff fell. Dave Batten was socializing with Mike Reed from Premier Audio Visual in Premier Audio Visual's truck. I'm sorry, trailer. But he didn't see the incident himself. Neither Dave Batten nor Dan Grimm instructed the plaintiff on how to remove this genie lift. Importantly, neither noticed any defect or anything out of the ordinary or anything not customary about this ramp. Plaintiff cites one case in her brief in support of her argument that CSS Audio owes her a duty of care. This is just a general case establishing what the factors are for establishing a duty of care. The facts aren't specific or analogous to this case at all. It's just simply listing the elements. Those elements are reasonable foreseeability of the injury, reasonable likelihood of the injury, the magnitude of the burden that guarding against the injury places on the defendant, and the consequences of placing that burden on the defendant. And that's the Bonavia case, which is cited in plaintiff's brief. I can just briefly touch upon that last element, the consequences of placing the burden on the defendant. If this court finds that CSS Audio did owe a duty, this would drastically expand liability in the state of Illinois. CSS Audio hired a subcontractor. Under the law, they are entitled to rely on that subcontractor to carry out their work. Sorry, carry out the subcontractor's work. To hold that a principal is responsible for inspecting every aspect of a subcontractor's work would drastically expand liability for general contractors in the state of Illinois. It's not supported by the law, and plaintiff has provided you with no case law to support this request to drastically expand the law and change the liability landscape in Illinois. I don't think it would be appropriate to do so without any legal basis. Plaintiff only addresses perhaps the foreseeability and likelihood factor in her brief. And again, it seems to me that the argument that Ms. Sohill just made was that this was a foreseeable injury because the genie lift was top heavy. I didn't take down a direct quote there, but plaintiff herself testified that she has unloaded genie lifts hundreds of times. She is well aware on how to unload these genie lifts, and she is well trained and has been doing it successfully hundreds of times. So I don't think there's any credible evidence that this injury was foreseeable. Your honors have pointed out that on the day of this accident, this was the last piece of equipment taken off the trailer. Everything before then had been unloaded safely without incident. Importantly, this included another genie lift. So the exact same piece of equipment was previously unloaded from this trailer without any incident. This injury was not foreseeable. This injury was not likely. It's inappropriate to impose a duty upon CSS Audio under these facts. Plaintiff in her brief, and there was no reply brief filed as well. So plaintiff fails to address these facts that are detrimental to her case against CSS Audio. This incident occurred on Premier Audio Visual's property. Premier Audio Visual was CSS Audio's subcontractor. There's no dispute about that. That's a completely undisputed fact. It's also undisputed that CSS Audio had nothing to do with the placement or setup of the rampant issue. That's from the testimony of Dave Batten, Dan Grimm, Mike Reed. Plaintiff herself also testified that she didn't see any CSS Audio employee setting up the ramp for what it's worth. Plaintiff also testified that CSS Audio did not control the incidental aspects of her job. And lastly, it's undisputed that it's not CSS Audio's responsibility to train stagehands. Plaintiff herself, I believe, testified to that. So under the law, even if Premier Audio Visual was negligent in placing the ramp, which we dispute, but just for the sake of argument, even if Premier Audio Visual was negligent, CSS Audio should not be held vicariously liable for those acts or omissions. A party that entrusts an independent contractor will not be held liable for the tortious acts or omissions committed by an independent contractor. That's from the Madden case, which is cited in our brief. The party in control, in this case Premier Audio Visual, is the proper party to be charged with the responsibility and bear the risk. That's from the Finesca case also cited in our brief. Again, plaintiff makes no response to this argument. So I think the argument should be waived. And I think plaintiff is not met her burden of showing that CSS Audio had any duty owed to her. CSS Audio is more of a passive party in this matter, almost equivalent to a bystander. I cited the Mollbauer case, which kind of has a funny set of facts, the corn king giant. It's kind of memorable. The facts are similar there. We're in a party, a shopkeeper was sued for an incident that happened right outside of his store. He didn't ask for that corn king giant to be there. He didn't. It didn't happen on his property. The incident, the injury to the bystander or to the or to the pedestrian. And that court in Mollbauer held that acts of one party do not impose liability on another unless some relationship between the parties or some circumstances impose a non-delegable duty upon the passive party. There's no relationship or circumstance in this case between plaintiff and CSS Audio, which should impose a non-delegable duty to CSS Audio. Again, CSS Audio did not employ Ms. Short or control the manner of her work. Ms. Short was not injured on CSS Audio's property. CSS Audio did not control or have any control over Premier Audio Visual's property. The sole connection here is ownership of a genie lift that was not defective and perfectly standard. Also, CSS Audio lacked any constructive knowledge of any alleged defect. A liability requires some knowledge on the part of the defendant active, sorry, actual or constructive of the possibility of danger complained of. That is in the Prater case, which is cited in my brief. CSS Audio had no reason to suspect that PAV or Premier Audio Visual allegedly placed or set up the ramp in a negligent matter. And that's from the testimony of Dan Grimm and Dave Batten. I would just finally like to note that Jeff Wald's testimony is irrelevant to the issues presented regarding CSS Audio, whether or not CSS Audio had any duty to plaintiff. That issue can be decided without having to deal with that issue of whether or not Jeff Wald's testimony presents a genuine issue of fact. Unless you guys have any questions, I don't have anything further. Thank you. Thank you, Counsel. Counsel for the appellant. They're on mute. Sorry about that, Your Honor. Your Honor, I kind of lost Ms. Brand on her arguments about the reply brief and the negligent supervision. We had already conceded there were a different, I believe, for count two against Ms. Brand's client, CSS Audio. I had already conceded that we can't approve paragraph D, E, F, J off count two and then paragraph three or count three, paragraph 22, D, G, H, J, K, and L at the hearing. And I'm not re-arguing those. We had filed a complaint initially before the discovery had began. And then the discovery was concluded. I had realized that, yes, she was not employed. They were not responsible for supervising among various things. So I had already conceded. Hence, I didn't argue that in my initial brief about those things that we would be able to prove. We did, however, argue that CSS Audio owed my client a duty of care because the lift belonged to them. And they are the one who asked Premier Audio to bring the lift back, fully knowing and fully acknowledging that the lift is going to be unloaded by not their employees, by the stagehand. And they instructed the stagehand, like my client, to unload that genie lift. For that reason, it became their responsibility to make sure that the condition of the ramp out of which this genie lift is going to be unloaded is safe for the transportation and unloading of the genie lift. Council, as I sit here, I'm at a desk that's a very heavy desk. And too heavy for me to move into my office. I know it's heavy. I hired somebody to move it. If they did something wrong in moving it and somebody got hurt, is that my fault? No, Your Honor. If you hire somebody to do that, you're basically contracting them and say, hey, remove this desk. Now, if the desk is heavy and you have an aide that is helping you and you say, okay, you know what, why don't you help them too? And she has no idea or he has no idea that this desk is heavy and how to move that and she gets injured, could you be held liable? I would have to argue yes, Judge. But in this case, your client, there's nothing she didn't know about moving this kind of lift. In fact, she had just moved one of these types of lifts. She knew the condition. So there's nothing that she didn't know when the accident happened. There's nothing someone could have told her. No, so she had moved genie lifts in the past. The first lift that came out of the trailer safely, that was not moved by Ms. Short. That was moved by other people. And this is the argument I have heard it from both counsels. Well, she knew she had done this before. Well, even if she had done that before, it doesn't make this safe for her. Just because if I speed every day and don't injure somebody, don't rear at somebody, and one time I do that. But put it back in the context of your argument against CSS Audio. How is it their fault? Because they are the one who is asking Premier to bring this lift and directing Ms. Short to unload that. It is their responsibility to make sure that the ramp that it's going to come out of is safe. My client didn't even know that this was not being brought for the event. She was just doing her job, being a good employee, following the orders, and they were in a better position to say, okay, you know, we are bringing this lift, and this ramp needs to be safe for it to be unloaded. I want to briefly touch base, Judge, because I know I don't have much time on Mr. Hayden's argument regarding the credibility of Jeff Wald. And if you heard his argument, he kept saying, Mr. Wald, the testimony is contradictory, contradictory. And, yes, it is contradictory, but we as a matter of law cannot decide to ignore his testimony. I know Your Honor asked as to what a genuine issue of material fact means. What is the term genuine means? There is no case that cites the word that at least I cited or could found that says what a genuine means. But what we do have is we know that there are many cases who have cited in what situations can you grant summary judgment. And what the cases say is summary judgment is a drastic means of disposing litigation, and it should only be granted when the right of the moving party is clear and free from doubt. If there is a doubt as to the condition of this ramp, it becomes a genuine issue of material fact. And I'm not saying, Judge, that the jurors are going to believe Mr. Wald, but at least we have a right to present Mr. Wald's testimony to the jury. Based on that, I would request that the circuit court judge's decision be reversed. In this case, we remain it for further proceedings. Thank you, Your Honor. Thank you, Counsel. The court will take this matter under advisement. Court stands in recess.